UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Robert Neil Adams, | ) C/A No. 4:09-2085-HMH-TER |
|---|---|
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Michael J. Astrue<br>Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

The plaintiff, Robert Neil Adams, filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 21, 2005, alleging disability due to diabetes, hypertension, lumbosacral degenerative disc disease, sleep apnea, morbid obesity, edema and depression. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on January 29, 2008. In a decision dated April 15, 2008, the ALJ

found that plaintiff was not under a disability. The Appeals Council's denial of plaintiff's request for review of the ALJ's decision made it the Commissioner's final decision for purposes of judicial review under See 20 C.F.R. §§ 404.981.

## II. FACTUAL BACKGROUND

The plaintiff was born on December 30, 1962, and was forty-five years of age at the time of his hearing before the ALJ. (Tr. 34, 43). Plaintiff has past relevant work experience as a production helper in a factory, an industrial cleaner, a custodian in a rest stop, and as a nursing assistant. (Tr. 34, 56). At the time of the hearing, plaintiff amended his onset date from January 15, 2002, to April 28, 2005, alleging he was disabled because of low back pain, sleep apnea, high blood pressure, congestive heart failure, arthritis, and obesity. (Tr. 203). Plaintiff appeared and testified at the hearing along with Kathleen H. Robbins, a vocational expert.

## III. DISABILITY ANALYSIS

The plaintiff argues that the ALJ's decision is incorrect because the ALJ improperly rejected the opinion of Dr. Sweatt that he required a job where he could keep his feet and legs elevated because of edema. Plaintiff asserts the VE testified that if this restriction by Dr. Sweatt was considered, there would be no jobs plaintiff could perform.

In the decision of April 15, 2008, the ALJ found the following, quoted verbatim:

(1). The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

(2). The claimant has not engaged in substantial gainful activity since January 15, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

(3). The claimant has the following severe impairments: diabetes mellitus, hypertension, lumbosacral degenerative disc disease, sleep apnea, and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

(4). The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5). After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, defined as lifting up to 20 pounds occasionally and 10 pounds frequently, sitting for six of eight hours in a workday, and standing or walking for six of eight hours in a workday, except that he could frequently push/pull with the lower extremities; could never climb ropes, ladders and scaffolds, but could do occasional climbing of ramps/stairs; could do occasional balancing, stooping, kneeling, crouching and crawling: should avoid concentrated exposure to fumes and hazards, and could do detailed, but no complex work with an SVP of 3 or 4.

(6). The claimant is unable to perform any past relevant work.(20 CFR 404.1565 and 416.965).

(7). The claimant was born on December 30, 1962 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9). Transferability of job skills is not material to the determination of disability income because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10). Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1560(c) and 404.1566, 416.960(c), and 416.966).

> (11). The claimant has not been under a disability, as defined in the Social Security Act, at any time from January 15, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-36).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security

Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV. ANALYSIS

A detailed discussion of the medical records are set out in the ALJ's decision and defendant's

brief. Plaintiff has not disputed these records. Therefore, they will not be repeated herein.

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of one time consulting physician, Dr. Sweatt. Plaintiff argues ". . .when the State Agency sent the claimant to a physician, Dr. Dale Sweatt on April 28, 2005, Dr. Sweatt rendered an opinion that if the claimant had a job, it would have to be one where he could keep his feet and legs elevated because of the claimant's edema.. . . Dr. Sweatt when on to say that the claimant should have a job where he would not have to be on his feet for very long because of the edema and that his job should be one that allowed him to sit and keep his legs elevated.. . . the vocational expert Dr. Robbins says no such jobs exist." (Plaintiff's brief, p. 3).

The Commissioner asserts that there was substantial medical evidence to support the decision of the ALJ. Defendant argues the ALJ was correct because he "considered the April 2005 opinion of Dr. Sweatt, a one time examining physician, that plaintiff was limited to jobs with minimal standing and walking and needed to keep his legs elevated, but properly discounted it, as he was entitled to do." (Defendant's brief, p. 17). Further, defendant asserts that the other medical evidence "undercut" Dr. Sweatt's conclusion. Id. Defendant contends that no other treating physician or examining physician noted plaintiff needed to keep his legs elevated but prescribed increased exercise and activity, that plaintiff did not report to any other medical source that he needed to elevate his legs, that there were notations in the record documenting instances where plaintiff denied having any problems with his legs, that plaintiff's extensive daily activities contradicted Dr. Sweatt's opinion that plaintiff needs to keep his legs elevated on a sustained basis, and that Dr. Sweatt based his opinion on plaintiff's report that he had a history of congestive heart failure which was inconsistent with the records of Dr. Criner. Therefore, defendant argues the ALJ reasonably

concluded that Dr. Sweatt based his assessment, in part, on plaintiff's self-reported symptoms and limitations. Id.

A review of the ALJ's decision reveals that he thoroughly discussed plaintiff's medical evidence. The ALJ discussed the report and opinions of Dr. Sweatt as follows:

> Upon medical consultative exam by Dell Sweatt, M.D., in April 2005, claimant said he had pulled a muscle in his low back in 1985 and over the years, the pain had become more intense and frequent. He said doctors had told him not to lift more than 25 pounds. He said the pain was not constant, but was frequent because the smallest wrong move started the pain and it took three to six days to recover from it with bedrest, heat and p.r.n. medication. He said he could not bend very far forward and that twisting his torso caused the most problems. Dr. Sweatt noted that the only medical records of this complaint were notes from AnMed from June 2004 when he had acute lumbosacral strain. Even though he had seen the same doctor since then, there was no mention of back problems in subsequent notes.
>
> Claimant said [he] had shortness of breath and his legs stayed swollen. Dr. Sweatt said the most recent record from AnMed dated February 2005 did not mention any diagnosis of congestive heart failure. He said he frequently felt dizzy and had occasional numbness and tingling in his hands and feet. His doctor had noted on several occasions that claimant was not compliant with medications and treatment. The claimant was morbidly obese. In addition, he said he had frequent episodes of otitis media, easy shortness of breath and frequent episodes of bronchitis.
>
> Claimant had good communication skills and comprehension. He remembered three out of three objects after a short delay. He spelled the word "world" forward and backwards and counted backwards from 20 to 1 correctly. He was unable to subtract serial sevens, but correctly subtracted serial threes and did very well with a cash transaction. He knew the date, day and location and the name of the President.
>
> He used no handheld device to ambulate and gait and station appeared normal. In general he was morbidly obese, alert and oriented X3, pleasant and cooperative. Weight was 339 pounds. Radial pulses were +2, but pedal pulses were not palpable. Abdomen was hugely obese, but had relatively normal exam.
>
> Even with obesity, he appeared to have normal muscle tone and bulk without deformity or asymmetry. He had 3+ edema of both legs from the feet to just above the calves. There were skin changes on the forelegs consistent with venous stasis disease. He had difficulty getting off and on the exam table and became winded during the exam with activity. In the upper extremities, he had full range of motion, but had difficulty with internal and external rotation because of shoulder pain and

stiffness. Upper extremity strength was 5/5 including bilateral hand grip. He had a difficult time getting on the table and this was a difficult exam because of his size. He complained of bilateral knee pain with leg movements, but he weighed so much that Dr. Sweatt could not manipulate each leg for hip range of motion. Lower extremity strength was 5/5. He was able to squat about two-thirds of the way, complaining of severe knee pain. He had significant crepitus in his knees and crepitus in his shoulders.

Dr. Sweatt observed no misalignment of the spine and found full range of motion in the cervical spine. In the lumbar spine he flexed forward to 43○, but extension and lateral flexion to the right and left were normal. Straight leg raise both sitting and supine was negative, except for knee pain. He had no tremor and intact sensation. Fine dexterity, rapid alternating movements and finger-to-nose were normal. He performed a fairly normal tandem gait, but this was difficult. Toe walk was good, but heel walk was poor. He was able to stand on each leg without difficulty. Toes were downgoing bilaterally. There was no Romberg and Dr. Sweatt could not elicit any deep tendon reflexes.

He concluded diabetes was fully controlled with history of medical noncompliance. Hypertension was controlled. He found venous stasis disease. He was morbidly obese and diabetic. All of these could be contributing to symptoms. He should not be on his feet for very long because of this and should have a job that allowed him to sit and keep his legs elevated. Dr. Sweatt said this was not a fair exam because of his weight, but he did not believe the back pain was severe. He said claimant did not appear to be particularly learning disabled during the evaluation.

(Tr. 19-21).

The ALJ found that plaintiff could perform light work. The ALJ stated the following reasons for not accepting Dr. Sweatt's opinion that plaintiff would need a job that allowed him to elevate his legs, quoted verbatim:

> . . . I do not accept Dr. Sweatt's conclusion that claimant could not be on his feet for very long and that he needs to sit and keep his legs elevated. Dr. Sweatt based his finding in part on claimant's history of congestive heart failure, but he correctly admitted that there was no current evidence of congestive heart failure.
>
> As to his back impairment, claimant admitted to Dr. Patel in 2002 that back pain did not occur daily, did not radiate, was exacerbated primarily by heavy or awkward lifting, and was relieved with over-the-counter medication. Lumbosacral x-rays showed minimal degenerative joint disease. In February 2003 when he was

8

diagnosed with acute lumbosacral strain, he denied precious trauma, although he told Dr. Sweatt that he had injured his back in 1995. He has also denied a history of previous spinal surgery and nothing other than very conservative has been offered for musculoskeletal pain since the alleged onset date. In February 2003, he had essentially normal musculoskeletal exam. In April 2004, he had normal alignment and mobility with no deformity, normal range of motion, normal straight and normal reflexes and sensation. In June 2004, he also had acute lumbosacral back strain that was without radicular symptoms and non-discogenic, with no history of previous trauma or surgery. In April 2005 he also told Dr. Sweatt the pain was not constant.

As to alleged arthritis in his knees, claimant reported knee symptoms to Dr. Patel but did not mention them again until 2005 when he saw Dr. Sweatt for disability exam. Dr. Patel made no objective findings regarding his knees. Claimant told Dr. Sweatt in April 2005 that he had arthritis that was worse in his lower back and in his knees. He said his hands, elbows and hip were beginning to have pain too, but he did not refer to symptoms in these joints to any other physicians.

(Tr. 29).

The ALJ found plaintiff's statements regarding having to elevate his legs not credible explaining as follows:

> In terms of the claimant's symptoms of peripheral edema, I do not accept as credible claimant's testimony that he needs to elevate his legs for 12-14 hours a day. He has not been diagnosed with deep vein thrombosis and had normal Doppler study in 2000. Other than Dr. Sweatt, no other physician, including treating doctors at Anmed, advised him to elevate his legs. In fact, AnMed doctors repeatedly urged him to pursue an exercise program that included walking and an AnMed doctor okayed his participation in a wellness program at the YMCA. It is doubtful that they would have recommended such activities had his leg swelling been as severe as he has alleged. Moreover, the level of daily activities that he testified to, including cooking, driving, attending school, cleaning and going to the store, is incompatible with that of a person who needs to elevate their legs for practically all of their waking hours.

(Tr. 34).

The undersigned finds there is substantial evidence in the medical record to support the ALJ's decision and the amount of weight he placed on the opinion of one time examining physician, Dr. Sweatt. The fact that a physician has seen the plaintiff only one time is a factor to consider when

9

determining the weight to give his opinion, especially if it is not generally supported by the record. See, e.g., Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004); Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004); Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003); Butera v. Apfel, 173 F.3d 1049, 1056 (7th Cir. 1999); Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1997); Lawson v. Astrue 2009 WL 223731 (W.D.Va. 2009)(The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. See McLain[1], 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008)). While Dr. Sweatt opined plaintiff would require a job that allowed him to sit and elevate his legs, no treating physician stated the same limitation. Thus, it was not generally supported by the record. As stated, the treating physicians encouraged plaintiff to walk and to exercise and did not place limitations that required sitting and elevating his legs. The ALJ fully set forth his reasoning for not giving controlling weight to Dr. Sweatts' opinion. As noted above, this court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether he applied the correct law. The ALJ noted that Dr. Sweatt's assessment was contradicted by the other medical records. No other physician, treating or examining, advised him to elevate his legs. Actually, the doctors had encouraged exercise programs to include walking. One physician okayed his participation in a wellness program at the YMCA. In deciding to discount Dr. Sweatt's opinion, the ALJ cited contradictory findings by other treating physicians such as doctors at Anmed and Dr. Criner. Dr.

---

[1] McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983).

Kucaba advised him several times that he needed to exercise and to follow his diet properly.[2] It was noted in several of the medical reports that plaintiff was noncompliant with his exercise program, diet, and/or medications. See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure to, inter alia, sustain a consistent treatment regimen supported ALJ's credibility determination that plaintiff's pain complaints were inconsistent with the evidence). Further, there is no record that plaintiff specifically sought treatment for his edema. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). Additionally, on several occasions, the medical records note plaintiff denied difficulty walking and had normal range of motion and strength. (Tr. 462, 486). As to his daily activities, the ALJ found that plaintiff reported engaging in cooking, doing dishes, folding clothes, sweeping, cleaning the bathroom, kitchen and living room, driving three times a week to the grocery store or doctor, and visiting relatives and neighbors. The ALJ also concluded from the record that plaintiff takes care of both of his elderly parents, he assists his mother with getting up, standing and memorizing things, as well as bathing or dressing as necessary, maybe once a week at most. Further, the ALJ noted plaintiff takes his mother to the doctor, helps his father move light objects, sees family members in South Carolina, builds plastic model vehicles, reads about World War II, and received unemployment benefits until the period expired. (Tr. 32). The ALJ found plaintiff's reported daily activities contradicted his testimony that he had to sit and elevate his legs

---

[2] The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997). The legal standard which applies is contained in 20 C.F.R. § 404.1527. Under § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician.

12-14 hours a day.

In the plaintiff's brief, he states that Dr. Sweatt, an independent physician, did give his opinion that plaintiff's legs should be elevated and "the fact that Dr. Sweatt is the only physician to give this opinion should not be any reason in and of itself [to] discard that opinion as being invalid. (Plaintiff's Brief, p. 5). This is an incorrect interpretation. This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson</u>, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock,</u> 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989.

This court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether he applied the correct law. As set out above in detail, the ALJ explained his assessment and his findings are supported by substantial evidence, and must be affirmed.

## V. CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

November 30, 2010
Florence, South Carolina